**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-2650 and 23-2651
_____

UPPER DARBY SCHOOL DISTRICT,
                              Appellant in No. 23-2650

v.

K.W., THROUGH HIS PARENTS T.B. AND T.W.; TANEESHA B.; THOMAS W.
_____

K.W., BY AND THROUGH HIS PARENT TANEESHA B., OF DELAWARE
COUNTY, PA; TANEESHA B.; THOMAS W.

v.

UPPER DARBY SCHOOL DISTRICT,
                              Appellant in No. 23-2651
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-22-cv-04343 and 2-22-cv-04347)
District Judge: Honorable Chad F. Kenney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 8, 2024

Before: BIBAS, FREEMAN, and RENDELL, *Circuit Judges*

(Opinion filed: August 14, 2024)

_____

OPINION[*]
_____

**FREEMAN**, *Circuit Judge*.

The Upper Darby School District appeals the District Court's judgment for a

disabled student and award of compensatory education. We will affirm.

**I**

**A**

K.W. is a child with disabilities enrolled in the Upper Darby School District. He

needs significant support to learn and, as a result, has been placed in private schools with

public funding since spring 2019.

During the 2020–21 and 2021–22 school years, K.W. attended Y.A.L.E. School

Philadelphia (YALE), a specialized school for students with disabilities. He struggled

while there. From the start of the 2020–21 school year, he "was often frustrated, yelling,

or running around the classroom" and consistently "required de-escalation." App. 6.

Two independent evaluations of K.W.—one conducted before he started at YALE

and the second while he was enrolled there—confirmed these behavioral challenges. To

address them, both evaluations recommended that K.W. receive a Positive Behavior

Support Plan (PBSP) based on a Functional Behavioral Assessment (FBA). Such a plan

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

would "collect behavioral data and develop strategies to address behavioral problems in a systematic and consistent way." App. 13 (cleaned up). But the District did not adopt this recommendation in K.W.'s Individualized Education Program (IEP).

Without further intervention, K.W.'s behavior deteriorated during the 2021–22 school year. A behavioral analyst who observed him documented this decline and again recommended a PBSP based on an FBA. Before any changes could be made, however, YALE disenrolled K.W. in November 2021, citing conflicts with his mother.

After K.W.'s disenrollment from YALE, the District searched for a new placement. One school, the Devereux Foundation, accepted K.W., but K.W.'s mother rejected that placement because she was concerned about allegations of abuse at Devereux facilities. She then filed an administrative due process complaint with the state agency, which she withdrew after reaching a temporary agreement with the District. That agreement provided that the District would send referrals to more schools and give K.W. interim tutoring through a private service. But the tutoring was inconsistent, and none of the other schools accepted K.W. by the end of February 2022.

B

In March 2022, K.W.'s mother filed a second administrative due process complaint (the operative complaint here). The complaint alleged that K.W. had been denied a Free Appropriate Public Education (FAPE) under the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973 during the 2020–21 and 2021–22 school years. A Hearing Officer held evidentiary hearings and issued a decision finding in part for K.W. and in part for the District. It

3

concluded that K.W. received a FAPE for the 2020–21 school year and most of the 2021–22 school year (through mid-April 2022), and it awarded compensatory education for the end of the 2021–22 school year.

Both parties appealed the Hearing Officer's decision to the District Court, where the cases were consolidated and the parties cross-moved for judgment on the administrative record. Departing from the Hearing Officer's conclusions, the District Court found that the District had denied K.W. a FAPE for all of the 2020–21 and 2021–22 school years and awarded K.W. $128,635 in compensatory education. The District appealed.

## II

The District Court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2). We have appellate jurisdiction under 28 U.S.C. § 1291.

"We review a district court's findings of fact for clear error, but we exercise plenary review over the legal standards that a district court applies and over its legal conclusions." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). "A finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (cleaned up). "We review the District Court's award of an equitable remedy under the IDEA for abuse of discretion." *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 716 (3d Cir. 2010).

4

## III

On appeal, the District argues that the District Court improperly cast aside the Hearing Officer's findings, erroneously concluded that K.W. was denied a FAPE, and abused its discretion by awarding K.W. full days of compensatory education. None of these arguments succeeds.

### A

"In reviewing a challenge to an administrative decision brought under the IDEA, a district court applies a 'modified de novo' review." *Q.T. ex rel. H.P.-B. v. Pottsgrove Sch. Dist.*, 70 F.4th 663, 666 (3d Cir. 2023) (citation omitted). This means giving "due weight" to factual findings in the administrative proceedings. *Id.* (citation omitted). A district court must treat such findings as "prima facie correct," and if it "does not adhere to those findings, it is 'obliged to explain why.'" *Id.* (citation omitted). The District claims that the District Court flouted the standard, "fail[ing] to give due weight and deference to the Hearing Officer's factual findings." Opening Br. at 23.

We disagree. The District Court's opinion thoroughly discussed its departures from the Hearing Officer's findings and bolstered its conclusions with legal authority and citations to the record. It noted, for instance, that it could not defer to the Hearing Officer's determination that K.W. did not need a PBSP given the evidence showing that the District "failed to implement the independent experts' recommendations." App. 14 n.9. The District Court considered the Hearing Officer's findings and explained its points of divergence in compliance with the modified de novo standard.

B

The District next challenges the District Court's finding that K.W. was denied a FAPE during the 2020–21 and 2021–22 school years. "[W]hether the District fulfilled its FAPE obligations . . . [is] subject to clear error review as [a] question[] of fact." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). So is the related question of an "IEP's appropriateness." *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 526 (3d Cir. 1995).

We discern no clear error in the District Court's finding that K.W. was denied a FAPE during the entire period in question. From the start of the 2020–21 school year, it was clear that K.W. suffered from significant behavioral problems that inhibited his ability to learn, and that he would benefit from a PBSP. These problems worsened during the 2021–22 school year, even as the District received further corroboration that he needed a PBSP. Under these circumstances, the District Court's finding that K.W. was denied a FAPE was not clearly erroneous.[1]

---

[1] The District offers several arguments to the contrary, none of which leave us "with a definite and firm conviction that a mistake has been committed." *P.S.*, 381 F.3d at 199 (citation omitted). To challenge the District Court's finding that K.W. was denied a FAPE during the 2020–21 school year, the District claims that the Court discounted testimony from K.W.'s teacher, who said that his behavior was improving under a schoolwide behavioral plan. But that same teacher also testified that K.W continued to have significant behavioral deficits. The District also faults the District Court for citing evidence of K.W.'s behavioral problems from before and after that school year. But even setting that evidence aside, the Court's finding was supported by other evidence that the District did not address K.W.'s behavioral needs. To challenge the District Court's finding that K.W. was denied a FAPE during the 2021–22 school year, the District claims that the Court ignored small changes that K.W.'s teacher made in the classroom. As the District Court noted, though,

## C

The District finally argues that the District Court abused its discretion in awarding K.W. full days of compensatory education and in declining to deduct the hours of District-provided tutoring. Courts may award compensatory education when a school district knows or should have known that a student's educational program is not appropriate. *M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996).

The District Court's compensatory education award was not an abuse of discretion. The record supports the Court's conclusion that K.W.'s behavioral challenges pervaded his school days and inhibited meaningful educational progress. The District was on notice for the entire period about these unmet needs: it knew that K.W. needed a PBSP before he started at YALE, and his mother repeatedly complained about his IEP while he was there. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012) ("[T]he case against [a] school district will be stronger if the district actually knew of the educational deficiency or the parents had complained." (cleaned up)).

Nor was the District Court's decision not to deduct the tutoring hours an abuse of discretion. The record reveals that the tutoring was intermittent, short lived, and unhelpful. Moreover, the District offered no reliable accounting of the number of hours K.W. spent with a tutor. These facts underpinned the District Court's finding that K.W. was denied a FAPE even while the tutoring was ongoing. Because the District Court's

---

these changes were not documented in the IEP or discussed with K.W.'s mother, and they failed to address K.W.'s challenges.

7

award was supported by the record and consistent with our guidance that compensatory education should "place disabled children in the same position they would have occupied but for the school district's violations of IDEA," *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (cleaned up), it did not abuse its discretion.

* * *

For the reasons set forth above, we will affirm the District Court's orders.

8